UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE BIONDO AND DIANE BIONDO,
    Plaintiffs,

Case No. 11-11664

v.

SENIOR UNITED STATES DISTRICT JUDGE
J.P. MORGAN CHASE BANK, N.A.,    ARTHUR J. TARNOW

    Defendant.    MAGISTRATE JUDGE R. STEVEN WHALEN
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [39]

This case concerns allegations by Plaintiffs that Defendant engaged in fraud. Plaintiffs allege that they were defrauded into signing a mortgage agreement with a variable interest rate when they thought they were agreeing to a mortgage with a fixed interest rate. For the reasons stated below, Defendant's Motion for Summary Judgment [38] is GRANTED. Plaintiffs' Motion for Summary Judgment [39] is DENIED.

### I. Procedural Background

Plaintiffs Eugene and Diane Biondo ("the Biondos") originally filed this action in state court on March 21, 2011. Defendants timely removed the action to this Court on April 18, 2011. Defendants'[1] Motion to Dismiss [8] was filed on June 24, 2011. On March 1, 2012, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing all of Plaintiffs' claims except their claim of fraud.

Defendant J.P. Morgan Chase's ("Chase") Motion for Summary Judgment [38] was filed on August 30, 2012. Plaintiffs' Motion for Summary Judgment [39] was filed on August 31, 2012.

---

[1] That portion of the case involved both Defendant JP Morgan Chase and Defendant HSBC Corporation. Defendant HSBC is not a party to the instant motion.

## II. Factual Background

On or about January 21, 2005, the Biondos entered into mortgage refinancing agreement with Chase in the amount of $143,000 on their home in Clinton Township. The Biondos allege that Chase, through its alleged agent, independent mortgage broker Joseph Sellers,[2] "intentionally failed" to provide them with disclosures that would have indicated that the mortgage agreement was unsound. The Biondos allege that Chase did not provide disclosures that the loan had a variable interest rate. The Biondos further allege that a "preliminary disclosure" by Chase indicated a fixed interest rate on the mortgage. The Biondos also allege that they did not receive a signed copy of the mortgage and note. The Biondos allege that Chase "failed and/or refused" to provide them with copies of important documents that memorialized the loan. The Biondos also state that Sellers never provided the final closing documents to them, and evaded 55 phone calls from them during the period immediately after the loan closing period. The Biondos allege that they did not receive loan documents from Chase until after they retained counsel.

At deposition, Eugene Biondo stated that, over the course of several meetings with Sellers, the Biondos signed a number of documents related to mortgage applications. Euguene Biondo stated that he read some of the papers he signed, but did not read others. Dep. of Eugene Biondo at 15. Biondo remembered signing documents at some time in December, 2004. He stated "[s]ome of the stuff wasn't even filled in." *Id*. at 20. The Biondos reference a "Good Faith Estimate of Settlement Charges" document for support of their contention that they reasonably thought they were receiving a fixed-rate loan. This document's only mention of interest is a charge for "15 days of Interest @ $21.55/Day" for a total of $323.22, to be paid by the lender in advance of the mortgage settlement.

---

[2]Sellers apparently worked with a number of banks and "said he was an independent." Def.'s M. Summ. J., Ex. C, Dep. of Eugene Biondo, at 13.

In addition, the document contains a clause describing the charges as estimates and noting that the signers "acknowledge that I/we have received a copy of the HUD Special Information Booklet, and the Consumer Handbook on Adjustable Rate Mortgages and the ARM Program Disclosures (for adjustable rate mortgages)." This document does not support Plaintiffs contention that a "preliminary disclosure" indicated the loan was a fixed rate loan.

At deposition, Plaintiff Eugene Biondo acknowledged his initials on the thirteen pages of the mortgage agreement, and his signature on the final page. However, he stated it was "the first time" he had seen the agreement. Dep. of Eugene Biondo, Def.'s Ex. C. at 42-43. He also acknowledged his signature and initials on a document entitled "Interest First Adjustable Rate Note." *Id.* at 44. He claimed that he had never seen the document before. *Id.* at 43-46. He acknowledged his signature on a document entitled "5/1 LIBOR interest only adjustable rate loan disclosure," and also claimed he had not seen the document before. Plaintiff Eugene Biondo correctly noted the signature page did not say anything about adjustable interest. *Id.* at 46. All of the above documents were signed on January 21, 2005. Plaintiff also stated that his monthly income, which was written on the form as $9000, was made up by Sellers and was a lie, and that Plaintiff himself did not have such a high income and was not aware that Sellers had said his income was so high. *Id.* at 77-79.

The Biondos state that they began receiving mailers indicating they had an adjustable-rate mortgage in 2008, but "disregarded these notices as 'junk mail' because they knew they had a fixed-rate mortgage." Pls.' Mot. for Summ. Judg. at 2. They allege they did not realize they had an adjusted-rate mortgage until early 2010 when they obtained a copy of their mortgage closing documents.

The Biondos allege that the variable interest rate on their loan meant that "any subsequent refinance was destined to fail due to a lack of equity cause by the loan terms." The loan was for

thirty years with a variable interest rate up to 11.25%. The Biondos allege that Chase had a responsibility to verify that they had sufficient assets to make payments as the loan interest rate adjusted upward. The Biondos allege that Chase "illegally, deceptively, and/or otherwise unjustly qualified Plaintiffs for a loan which Chase knew, or should have known, that Plaintiffs could not qualify for, and could not afford." The Biondos allege that Chase intentionally concealed the negative implications of the loan. They further allege that Chase did not explain the potentially high interest rates of the loan.

### III. Analysis

Summary judgment is appropriate under Fed. R. Civ. P. 56(c)(2) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." The facts and all inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a moving party produces evidence establishing lack of a genuine issue of material fact, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*. The mere existence of "a scintilla of evidence" in support of a plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

### A. Damages

The Biondos allege that they were given an adjustable-rate mortgage when they thought they were agreeing to a fixed-rate mortgage. Complicating this argument, however, is the fact that the

Biondos have not been harmed by the variable interest rate on their loan. Chase notes that the average interest rate for a 30-year fixed rate loan in January of 2004 was between 5.65% and 5.90%. Def.'s M Summ. J., Ex. L. During the first five years of their mortgage with Defendant, Plaintiff's paid an interest rate of 5.375%. Def.'s Mot. Summ. J., Ex. B. After 2009, Plaintiffs' interest rate dropped to 3.375% and fell to 3% for 2011. It therefore appears that the Biondos actually benefitted from a variable-rate rather than fixed-rate loan.

The Biondos respond that they are concerned their interest rate might increase in the future and make their loan payments unaffordable. Dep. of Diane Biondo, p. 52. Chase argues in response that it is not possible to predict whether the interest rate will increase, or increase to a level above that of a fixed-rate loan, and thus argue that the Biondos alleged damages are too speculative. The Court agrees, as compensatory damages "cannot be awarded when the occurrence of damage itself is speculative." *McCuiston v. Hoffa*, 351 F.Supp.2d 682, 688 (E.D. Mich. 2005) (Feikens, J.) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)). The Biondos next argue that, had their interest-rate been fixed rather than variable, they would have made double and triple payments on their mortgage. Dep. of Eugene Biondo, p. 101-02. This argument makes little sense. The Biondos were not prohibited by their variable-rate loan from making double or triple payments, and their decision not to do so appears unrelated to the alleged fraud.

The Biondos are therefore precluded from receiving any money damages in this case as any damages would, at this point, be purely speculative. However, this does not mean that the Biondos have no remedy, as the Court is still capable of granting equitable relief.

**B. Statute of Frauds**

Chase next argues that Mich. Comp. Law § 566.132(2) states that "[a]n action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." Among the promises are "a promise or commitment to lend money, grant or extend credit, or make any other financial accommodation." This prohibition also extends to a "commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation."

On the face of the statute, this seems to bar the Biondos claim of fraud, as they are essentially asserting an oral promise for a particular type of loan that was not memorialized in writing. This conclusion is supported by case law, as "to the extent that the plaintiffs are seeking to enforce an oral statement by a [loan servicer] regarding the terms of their loan or a modification, the statute of frauds bars the plaintiffs' claim." *Talton v. BAC Home Loans Servicing, LP*, 839 F.Supp.2d 896, 911 (E.D. Mich. 2012) (Lawson, J.) (citing *Crown Techn. Park v. D & N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. App. 2000) (holding that the statute of frauds applies to oral promise to waive a particular provision of a loan)).

The Biondos argue in response that "the misrepresentation of the character of a loan is not a 'financial accommodation' within the contemplation of the statute." Rather, they argue that the alleged oral promise of a fixed-rate loan was a "mischaracterization of the nature of the obligation." Based on *Schering-Plough Healthcare Prod. v. NBD Bank*, 98 F.3d 904, 909 (6th Cir. 1996), the Biondos argue that while "the term financial accommodation refers to transactions other than those involving the extension of money or credit," the Court should look to "whether execution of these promises would have required [Defendant] to advance its own funds at a risk of loss." The Biondos

thus argue that "Chase's promise to give the Biondos a fixed-rate instead of a variable rate is not an oral promise that exposes Chase to any further risk of loss than offering the loan in the first place."

The Biondos' argument, while interesting, is ultimately unpersuasive. It is clear that "financial accommodation refers to transactions other than those involving the extension of money or credit." Thus, a financial accommodation is more than the merely offering the loan in the first place. Rather, the financial accommodation includes "the terms of their loan or a modification." *Talton v. BAC Home Loans Servicing, LP*, 839 F.Supp. 2d at 911.

Accordingly, the Court finds that the Biondos' claim of fraud in the terms of their loan is barred by the statute of frauds.

### IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment [38] is **GRANTED**. Plaintiffs' Motion for Summary Judgment [39] is **DENIED**.

**SO ORDERED**.

                                      s/Arthur J. Tarnow
                                      ARTHUR J. TARNOW
                                      SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 22, 2013

---

### CERTIFICATE OF SERVICE

I hereby certify on April 22, 2013 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on April 22, 2013: **None.**

                                      s/Michael E. Lang
                                      Deputy Clerk to
                                      District Judge Arthur J. Tarnow
                                      (313) 234-5182